IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

OCTOBER 1998 SESSION

FILED

November 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 02C01-9802-CC-00045 |
| Appellee, | ) | |
| | ) | Carroll County |
| v. | ) | |
| | ) | Honorable C. Creed McGinley |
| MICHAEL AARON SCOTT, | ) | |
| a/k/a ERIN SCOTT, ) | | (Sale of Cocaine) |
| | ) | |
| Appellant. | ) | |

FOR THE APPELLANT:

Dwayne D. Maddox, III
19695 East Main Street
P. O. Box 827
Huntingdon, TN 38344

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Marvin E. Clements, Jr.
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

G. Robert Radford
District Attorney General
111 Church Street, P. O. Box 686
Huntingdon, TN 38344-0686

Eleanor Cahill
Assistant District Attorney General
111 Church Street, P. O. Box 686
Huntingdon, TN 38344-0686

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

# OPINION

The appellant, Michael Aaron Scott, referred herein as the defendant, appeals as a matter of right from a judgment entered by the Carroll County Circuit Court as a result of a jury finding him guilty of sale of cocaine and imposing a fine of $10,000. In his single appellate issue, the defendant asks whether there was sufficient credible evidence to support a conviction in this case as a matter of law. After a review of the evidence in this record, the briefs of all parties, and the applicable law, we find there was sufficient evidence to support the defendant's conviction and affirm the trial court's judgment.

## FACTUAL BACKGROUND

The testimony at trial established the following facts. Steve Lee, a criminal investigator for the Twenty-Fourth Judicial District Attorney General and director of the judicial district's drug task force, testified he was conducting a joint operation with the Inspector General of the Department of Housing and Urban Development (HUD) to combat drugs in public housing. The operation covered Henry, Carroll, and Hardin Counties. In the Carroll County operation, Steve Lee brought in an undercover agent, Sylvester Island. Island had been recommended to Lee by the Bolivar, Tennessee Police Department. As a result of a background check on Island, Lee was aware that Island had been convicted of felony check charges in Kentucky. Lee was not aware of any drug use by Island, but knew of some dismissed charges of sale of cocaine in Obion County on the basis Island was not the correct individual.

Officer Lee was aware Island had been tested for drug use by an employer, which was negative. At the time of this drug buy, Island was living at 6056 Walnut Circle in McKenzie, Tennessee with his girlfriend, Jeronda Parker. On December 4, 1996, Lee was contacted by Island and both met at the airport. Lee searched Island, according to standard procedures, for any drugs, but could not recall if he searched Island's car. Island was given $100. After placing a transmitter on Island, Lee followed Island back to the Walnut Circle address. Lee parked his car at the McKenzie Depot so he would not be seen and to monitor the possible drug buys. Officer Lee

2

monitored a drug buy and was given a signal by Island to meet at the airport. At the airport, Island gave Lee a small bag which was initialed and sealed. The bag and contents were sent to the Tennessee Crime Laboratory for analysis. Lee had no independent proof to support that the defendant sold or delivered any cocaine, other than the undercover agent. Island's girlfriend, Jeronda Parker, was not an undercover agent. However, Ms. Parker accompanied Island to the airport on December 4, 1996, but she was not searched for any drugs since there were no female officers present.

Mr. Sylvester Island testified he did undercover work directly with Steve Lee in the Twenty-Fourth Judicial District. Island had done undercover work for ten years, beginning with the state troopers. On December 4, 1996, Island was living at 6056 Walnut Circle in the projects with Jeronda Parker. Island testified he met Steve Lee at the airport on the evening of December 4 where Lee searched Island, wired him, and gave him $100 to purchase crack cocaine. Island's car was searched randomly. Prior to meeting Lee, Island had talked to Tracy Spears about purchasing some cocaine. Island believed he could buy some cocaine from the defendant, thus he contacted Lee. Island testified this was the first time he had met the defendant, and understood the defendant was Spears's cousin.

Upon arriving at his apartment, Island testified that Tracy Spears and Chris Nash came by the house. Spears attempted to sell Island some crack cocaine, which Island refused since he had been "ripped off" by Spears before. Island told Spears, "I didn't want that package, I'd buy it from the guy myself." Spears left and returned later with the defendant. Chris Nash remained in Island's apartment. When Spears returned, the defendant was in the front passenger seat and an unknown person was in the rear. Nash came outside and got in the back seat of the car. Island testified he went to the passenger's side of the car and "the dope was sent out. Mr. Aaron Scott gave Tracy the dope. And then the dope was placed in my hand. . . . I gave him [the defendant] directly the hundred dollars." Island got the tag number of the car as it left. During the entire buy and conversations, the defendant did not say one word.

Island testified he became involved in undercover work as a result of his brother's drug involvement and hanging in the streets with people like the defendant. Island denied any drug use,

especially on the night of December 4, and had taken random drug screens at his employment. Island testified as to his insights in crime in the projects. Island testified that since he did not know the defendant's name, Steve Lee had him find out the name of the defendant. Island met Tracy Spears and went to the defendant's home where they drank a few beers and a shot of Canadian Mist. Island testified he had made approximately 72 buys in Carroll County, making $7,200.

Notwithstanding Island's notes made after the buy, Island insisted he did not visit the defendant's home or learn his name until the morning of December 5. Island testified someone came in and had conversation with the defendant about buying some stolen property, including a radio scanner. Island insisted he bought the cocaine from the defendant outside of his apartment, and did not give the $100 to Spears to get the cocaine for him. Ultimately, Island admitted he gave the buy money to Spears, who in turn gave the money to the defendant after receiving the cocaine.

Ms. Lisa Mays, special agent forensic scientist for the Tennessee Bureau of Investigation, testified she received a bag from Steve Lee requesting that the contents be examined for drugs. After an analysis, Ms. Mays determined the substance was cocaine base, a Schedule II controlled substance, which weighed 0.2 grams.

The tape of the drug buy was played for the benefit of the jury.

In behalf of the defendant, Tracy D'Shon Moore testified he has never used the name of Tracy Spears. Moore testified he was presently confined at the Hardeman County Correctional Facility as a result of pleading guilty to three counts of sale of cocaine in Carroll County. Moore testified that on December 4, 1996, the defendant was not present when Moore made a sale of cocaine to Sylvester Island. Mr. Moore testified on the morning of December 4 he and Island went to the defendant's home, where Island introduced himself to the defendant. There were no drug purchases at this time. At 7:00 p.m. on the night of December 4, 1996, Moore and Chris Nash met Island at Island's home. Island advised Moore that he wanted some drugs, so Moore offered to get the drugs for him, but Island said he wanted to get the drugs himself. Moore left and returned with "two guys." Moore testified that Island approached the car and one of the guys in the front seat gave Island the "dope," Island shook the "dope" out, and handed the money in the door. Moore then

4

walked into the apartment. Moore testified the defendant was not present at this drug buy and Island had used crack cocaine in his presence. Moore testified he only knew the first names of the two guys he brought back to Island's apartment, and then admitted Island gave him the buy money. Moore testified he had seen these two guys on two other occasions and heard they were from Memphis.

Chris Nash testified he first met Sylvester Island through Tracy Spears in November, 1996. Nash testified he and Spears went to Island's apartment about 7:30 p.m. on the night of December 4, 1996. Several people were at the apartment including Island's girlfriend. Nash observed Spears and Island talking and then Spears left. Approximately twenty minutes later, Spears returned and came into the kitchen. Then Island and his girlfriend purchased $100 worth of cocaine from Spears. Island then split up the cocaine and Nash, Spears, and Island smoked some of the crack cocaine. After about twenty minutes, Spears and Nash left. Nash knew the defendant and insisted the defendant was not present on the night of December 4, 1996.

Based on this testimony, the jury found the defendant guilty of sale of cocaine.

**APPELLATE ISSUE**

The defendant maintains that under the facts and circumstances of this case, the evidence does not justify the finding of guilt for the charge of sale of a controlled substance, to wit: cocaine. The State contends that the defendant has failed to carry his burden in proving that the evidence preponderates against the jury's verdict.

When reviewing a trial court's judgment, the appellate court will not disturb a verdict of guilty unless the facts in the record and inferences which may be drawn therefrom are sufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Tenn. R. App. P. 13 (e); State v. Tuggle,* 639 S.W.2d 913 (Tenn. 1982); *State v. Brewer,* 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Initially, a defendant is cloaked with the presumption of innocence. *Tuggle,* 639 S.W.2d at 914. However, a jury conviction removes the presumption of innocence and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *Id.* In determining the sufficiency of evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia, 443 U.S. 307, 319,* 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994). This rule is applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The defendant contends the undercover agent, Sylvester Island, is not worthy of belief due to the discrepancies in his testimony. Also, the tape recording is unintelligible and any rational trier of fact could gain no useful information from it. The review of the record establishes that an excellent cross-examination by the defendant brought out many discrepancies in Island's testimony.

However, the jury was well aware of the contradiction between the State witness, Sylvester Island, and the two defense witnesses, Tracy Moore and Chris Nash. Unfortunately for the defendant, the jury resolved the testimony in favor of the State. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as triers of fact. *State v. Locust,* 914 S.W.2d 554, 558 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1995); *State v. Boling,* 840 S.W.2d 944, 947 (Tenn. Crim. App.), *per. app. denied* (1992).

In conclusion, the evidence in this record supports the conviction of the defendant and the trial court's judgment is affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
DAVID G. HAYES, JUDGE